IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NICOLE C. WITTMER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-2188 |
| | § | |
| PHILLIPS 66 COMPANY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Nicole Wittmer, a transgender woman, sued Phillips 66 Company for unlawful discrimination based on her sex after Phillips rescinded a job offer it had made after interviewing her. (Docket Entry No. 1). Phillips moved for summary judgment, Wittmer responded, and Phillips replied. (Docket Entry Nos. 14, 16, 20, 24). The court held a hearing at which the parties presented argument. After careful consideration of the motion, response, and replies; the record evidence; the arguments of counsel; and the applicable law, the motion for summary judgment is granted. This case is dismissed by final judgment separately entered. The reasons are explained below.

**I.      Background**

Wittmer applied for a position as an Instrument and Reliability Engineer with Phillips at the Borger Refinery in Borger, Texas, on May 31, 2015. (Docket Entry No. 14-2 at 2). Wittmer interviewed on August 3 with the Engineering and Reliability Team Lead, David Long; the Maintenance Manager, Karl Sosebee; and a panel that included the Human Resources Manager, Ellen Fulton; the Area Reliability Engineer, Lou Cardinale; the Core Craft Team Leader, David

1

Gaines; and the Maintenance Engineering Team Lead, Michael Massey. (*Id*.; Docket Entry No. 14-16 at 2; Docket Entry No. 14-18 at 2). During her interviews, Wittmer discussed projects she was currently performing as an employee at Agrium, and said that she was looking for a new job because Agrium wanted her to spend more time working in Canada than she wanted to. (Docket Entry No. 14-14 at 5).

On August 10, Phillips offered Wittmer the position. The offer was in writing and stated that it was conditioned on certain requirements, including satisfactory results of a background check. (Docket Entry No. 14-6). Wittmer accepted the offer on August 14. Wittmer received a generic hiring email from Phillips telling her that she would receive emails from an independent background-check company, HireRight, with information about completing the background check. (Docket Entry No. 14-7; Docket Entry No. 16-4).

HireRight completed the background check and issued a report. The report informed Phillips's Human Resources Partner, Jacqualine Wilkinson, of a discrepancy in Wittmer's employment history with Agrium. The report showed that Wittmer was not currently employed with Agrium on August 3, the date of her interview with Phillips. (Docket Entry No. 16-9). According to the report, Wittmer initially told HireRight that her employment with Agrium had ended on August 1, 2015, but Agrium told HireRight that Wittmer's employment ended on August 2. (*Id*.; Docket Entry No. 14-2 at 2–3; Docket Entry No. 16-5 at 7). When Wittmer interviewed with Phillips on August 3, she described herself as still employed by Agrium.

On September 2, Wilkinson informed Fulton of the discrepancy. (Docket Entry No. 16-9). Fulton contacted Wittmer to ask her about it. (Docket Entry No. 16-9; Docket Entry No. 14-2 at 3). In response, Wittmer emailed Fulton a copy of her July 28, 2015 termination letter from Agrium, stating that Wittmer's employment with Agrium was terminated without cause effective

July 28 and that she would be paid through August 2. (Docket Entry No. 14-9 at 3).

After Wittmer emailed Fulton, on September 3 and 4, Wittmer sent a series of unsolicited and uninvited emails to Fulton and other Phillips employees. Wittmer wrote on September 3: "Every female engineer at Agrium Borger has quit in the past 5 months. I myself left work in tears on occasion." (Docket Entry No. 14-8 at 4). Wittmer wrote another email on September 4: "All of the 3 female engineers at Agrium Borger have resigned within the past 4 months including me. One of the[m] Kaitlin told me she file[d] an EEOC complaint against them." (*Id.* at 5).

On September 8, Fulton conferred with Sosebee and Long about Wittmer's inconsistencies in describing her employment status and the emails Wittmer had sent. They decided to rescind Wittmer's job offer because of the inconsistent reports Wittmer had given about her employment with Agrium at the time of her Phillips interview. (Docket Entry No. 14-2 at 3; Docket Entry No. 14-16 at 2; Docket Entry No. 14-18 at 2). Before relaying the decision to Wittmer, Fulton emailed the Phillips Employee Relations Advisor, Jermaine Davis, asking him to review the decision. (Docket Entry No. 14-11). Fulton also sought advice from Refining and Labor Relations Manager, Peter Terenzio, and the Borger Refinery Manager, Pete Stynes, before notifying Wittmer of the decision to rescind the employment offer. (Docket Entry No. 14-2 at 3).

Two days later, on September 10, before Fulton informed Wittmer of the decision to rescind the offer, Wittmer sent Fulton and the Phillips Shared Services Recruitment Associate, Jennifer Edwards, another unsolicited email. Wittmer wrote:

> I became aware that you all found out that I am a transsexual woman. No one ever comes and says that is why we do not want you. But to make up a false reason to is not Christian. Not only

3

> does you[r] diversity policy disallow discrimination, there are also several federal laws that prohibits discriminating against me also.

(Docket Entry No. 14-8 at 8). Fulton responded with an email, stating that Phillips was unaware of Wittmer's status as "a transsexual woman until receiving [her] email." (*Id.*). Fulton assured Wittmer that "[t]his knowledge will not influence our decision one way or another" and reminded her that Phillips had expressed concern about the discrepancies revealed during her background check. (*Id.*). About 25 minutes after Fulton sent that email, Wittmer began sending another series of unsolicited and confusing emails to various Phillips employees. To Fulton and Edwards she wrote:

> When I talk in a very loud area, buy [sic] voice lowers. And Agrium let me go because the manger kept getting feedback from the other that thought I was a man. I did not want to talk about it because it hurts me very much and I did not want to cry in front of any of you. That is why I did not want to talk about Agrium with you.

(Docket Entry No. 14-8 at 13). The next day she wrote to Fulton: "Can were [sic] get together with the ACLU and discuss this firsts." (*Id.* at 16). On September 12, Wittmer wrote to Fulton and Edwards: "Attached are a few laws that you may not be aware of," and included an attachment called "Transsexual protection laws." (*Id.* at 18).

That same day, Wittmer sent Edwards, Fulton, Long, and Cooper the following email:

> I know now beyond a shadow of a doubt that you are wrongly trying to rescind my employment offer because I am a transsexual woman. There is a great deal of misinformation about transsexual women that is clouded by transgender trouble makers and I am not under their umbrella. In fact, there is a transsexual female Judge in Houston, TX. I have a long history of excellence at my job because I focus on my job and nothing else. I do not belong to any Transgender groups or associations. I belong to the society of women engineer, and support girls inc and the girl scouts. I also have belonged to a few Christian women church groups. I have a great deal of experience this will be extremely valuable to the

> Borger Refinery.
>
> Also the only document that GOD has touched is the TEN COMMANDMENTS, and he says not to lie and to love thy neighbor as thyself.

(*Id.* at 19). On September 14, Wittmer emailed a Phillips employee named Anna La Rock, stating:

> Press release
>
> I applied for a position at the Phillips 66 refinery in Borger, Texas. They did a thorough background and job check. They found out that I am a transsexual woman. Because of that they rescinded my job offer.

(*Id.* at 21–22).

Fulton called Wittmer on September 14 to formally rescind the Phillips employment offer. Fulton sent an email the next day to confirm the decision and explain the reasoning. "Upon follow up on information received post-offer during the pre-employment process, it was determined that you were not employed at the time of your interview. Your employment with Agrium had already ceased at the time of your interview. We have decided to rescind your offer because you were not forthright during the interview about your employment and led us to believe information that was not the case." (Docket Entry No. 14-12).[1] It is undisputed that Wittmer represented that she was currently employed with Agrium during her interview with Phillips on August 3. It is also undisputed that different sources showed three conflicting dates

---

[1] Wittmer wrote an email the following day to Edwards, Fulton, Long, and Cooper, stating:

> This is to confirm a phone call that I received from Ellen Fulton, on 9/14/2015 at 15:18 CST, that she has decided to renege on the job offer to me for Instrument and reliability engineer at the Borger Refinery because I am a transsexual woman.

(Docket Entry No. 14-8 at 23).

5

for the end of her Agrium employment—July 28, August 1, and August 3—all before, or on the day of, her in-person interview with Phillips during which she described herself as currently employed at Agrium. It is undisputed that Phillips learned—from an Agrium letter that Wittmer provided to Phillips—that her employment with Agrium had been terminated effective July 28, which was before Wittmer interviewed at Phillips and said she was still an Agrium employee.

On October 5, Wittmer wrote to HireRight disputing its report of her dates of employment with Agrium. (Docket Entry No. 16-5 at 6). Wittmer submitted an employment verification from Agrium showing that her employment terminated on August 3, 2015. (Docket Entry No. 15-2 at 12). HireRight completed its investigation on November 17 and verified that Wittmer's employment with Agrium had ended on August 3, 2015, the date of the Phillips interview. (*Id.* at 14). There is no evidence that HireRight notified Phillips of the results of its investigation.

In October 2016, Wittmer filed a charge of discrimination with the Equal Employment Opportunity Commission. She claimed that the offer was rescinded because of sex discrimination. (Docket Entry No. 15-2 at 2). The EEOC investigated and issued a right-to-sue letter. (Docket Entry No. 15-2 at 24).

In this suit, Wittmer alleges that Phillips rescinded her job offer based on her identity as a transgender woman and her failure to conform to female sex stereotypes. After discovery, Phillips moved for summary judgment.

## II. The Legal Standards

### A. Summary Judgment

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Vann v. City of Southaven*,

*Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (citations omitted); *see also* FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 Fed. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n. 16 (5th Cir. 1994)). A fact is material if "its resolution could affect the outcome of the actions." *Aly v. City of Lake Jackson*, 605 Fed. App'x 260, 262 (5th Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Exploration, LLC v. Steadfast Ins. Co.*, 767 F.3d 503 (5th Cir. 2014).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Bailey*

*v. E. Baton Rouge Parish Prison*, 663 Fed. App'x 328, 331 (5th Cir. 2016) (quoting *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Jurach v. Safety Vision, LLC*, 642 Fed. App'x 313, 317 (5th Cir. 2016) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 866 F.3d 698, 702 (5th Cir. 2017).

    **B.**    **Title VII**

Title VII prohibits employment discrimination against "any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To establish a *prima facie* case of discrimination, an employee must present direct evidence of discrimination or, in the absence of direct evidence, rely on circumstantial evidence using the *McDonnell Douglas* burden-shifting analysis. For this analysis, the employee carries the burden and must prove that (1) she belongs to a protected class; (2) she applied for and was qualified for the position; (3) she was rejected despite being qualified; and (4) others similarly qualified but outside the protected class were treated more favorably. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006). If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to show it had a legitimate, non-discriminatory reason for rescinding the offer. *See McDonnell Douglas*, 411 U.S. at 802. If the employer can show a legitimate, non-discriminatory reason, the presumption of discrimination

disappears, and the burden shifts back to the employee to show that the proffered reason was a pretext for discrimination or that the employee's protected status is another motivating factor for the decision. *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 736–37 (S.D. Tex. 2014).

Actionable sex discrimination under Title VII includes discrimination against those who do not conform to sex or gender stereotypes. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 250–51 (1989). "Numerous courts, including ours, have recognized that a plaintiff can satisfy Title VII's because-of-sex requirement with evidence of a plaintiff's perceived failure to conform to traditional gender stereotypes." *EEOC v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 454 (5th Cir. 2013); *see also Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1042 (8th Cir. 2010) (discrimination against women who do not wear dresses or make-up precludes summary judgment for the defendant).

## III. Analysis

Until recently, transgendered persons have not been recognized as a protected class under Title VII. "[C]ourts have been reluctant to extend the sex stereotyping theory to cover circumstances where the plaintiff is discriminated against because the plaintiff's status as a transgender man or woman, without any additional evidence related to gender stereotype non-conformity." *Eure v. Sage Corp.*, 61 F. Supp. 3d 651, 661 (W.D. Tex. 2014); *see also Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1222 (10th Cir. 2007) ("[D]iscrimination against a transsexual because she is a transsexual is not 'discrimination because of sex.' Therefore, transsexuals are not a protected class under Title VII and [a plaintiff] cannot satisfy her prima facie burden on the basis of her status as a transsexual.").

Within the last year, several circuits have expanded Title VII protection to include

discrimination based on transgender status and sexual orientation. The failure-to-conform stereotyping protection from *Price Waterhouse* has been expanded to include transgender persons. The Sixth Circuit recently held that "Title VII protects transgender persons because of their transgender or transitioning status, because transgender or transitioning status constitutes an inherently gender non-conforming trait." *Equal Emp't Opportunity Comm'n v. R.G. & G.R. Harris Funeral Homes, Inc.*, No. 16-2424, 2018 WL 1177669, at *9 (6th Cir. Mar. 7, 2018). The Sixth Circuit explained that an employer cannot take action against an employee "based on that employee's status as a transgender person without being motivated, at least in part, by the employee's sex." *Id.* at *8. The Sixth Circuit explained that "discrimination against transgender persons necessarily implicates Title VII's proscriptions against sex stereotyping. . . . There is no way to disaggregate discrimination on the basis of transgender status from discrimination on the basis of gender non-conformity." *Id.* at *9.

In *Zarda v. Altitude Express, Inc.*, No. 15-3775, 2018 U.S. App. LEXIS 4608 (2d Cir. Feb. 26, 2018) (en banc), the Second Circuit held that discrimination based on sexual orientation is a form of sex discrimination under Title VII, following the Seventh Circuit's opinion in *Hively v. Ivy Tech. Cmty. Coll. of Ind.*, 853 F.3d 339 (7th Cir. 2017) (en banc). The Second Circuit explained that discrimination for failure to conform to sex stereotypes supports treating sexual orientation as a protected class. "We now conclude that sexual orientation discrimination is rooted in gender stereotypes and is thus a subset of sex discrimination." *Zarda*, 2018 U.S. App. LEXIS 4608 at *40. The same is true for discrimination based on transgender status.

Although the Fifth Circuit has not yet addressed the issue, these very recent circuit cases are persuasive. They consistently recognize transgender status and orientation as protected classes under Title VII, applying the long-recognized protections against gender- or sex-based

stereotyping. Applying these recent cases, the court assumes that Wittmer's status as a transgender woman places her under the protections of Title VII.

Accepting that Wittmer is a member of a protected class, she fails to point to or submit record evidence making a *prima facie* case that Phillips discriminated against her because of her transgender status or a failure to conform to sex stereotypes. Even assuming a *prima facie* case, there is no record evidence to support an inference that Phillips's stated reasons for rescinding her offer were false, pretextual, or that Wittmer's transgender status was a motivating factor in the decision to rescind the offer. The record shows no evidence that Phillips knew about Wittmer's status as a transgender woman until after it had decided to rescind the offer. Phillips offered Wittmer the job after she met with a number of people for a day of in-person interviews. None of her interviewers raised any issues, questions, or comments about her appearance, sex, or mannerisms. Nothing in the record shows that her sex or appearance played any role in the decision to rescind the offer.

### A. The *Prima Facie* Case

Without direct evidence of discrimination, Wittmer must rely on circumstantial evidence to raise a factual dispute as to discrimination using the *McDonnell Douglas* framework. Using the *McDonnell Douglas* analysis, Wittmer's *prima facie* case requires showing that: (1) she belongs to a protected class; (2) she applied for and was qualified for the position; (3) she was rejected despite being qualified; (4) and others similarly qualified but outside of the protected class were treated more favorably. The second and third prongs are undisputed. Even assuming that Wittmer satisfies the first prong because she is transgender, as discussed above, Wittmer fails on the fourth prong.

To be considered similarly situated, employees must be in "nearly identical

circumstances." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)); s*ee also Skinner v. Brown*, 951 F. Supp. 1307, 1315 (S.D. Tex. 1996) (no *prima facie* case because the plaintiff "failed to present any competent summary judgment evidence that others [outside protected class] received more favorable treatment under similar circumstances"). Wittmer argues that the *McDonnell Douglas* standard is not meant to be "onerous," citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981), and that it is not necessary to meet each *prima facie* prong to survive summary judgment. *See, e.g.*, *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case"). She argues that she does not need to show that similarly situated applicants outside the protected class were treated more favorably. Wittmer relies on discrimination cases that deal with termination rather than failure-to-hire. In the context of failure-to-hire cases, the Fifth Circuit recently held that summary judgment is properly granted for failing the fourth prong of the *prima facie* case. *See Rogers v. Pearland Ind. Sch. Dist*., 827 F.3d 403, 408–09 (5th Cir. 2016). Wittmer has not identified or presented evidence that she was treated less favorably than other similarly situated non-transgender applicants, or than applicants who made misrepresentations about their employment status or history. The record evidence shows that the position Wittmer applied for was not filled. (Docket Entry No. 29 at 1).

Even if Wittmer is correct that she needs only to show an inference of sex discrimination to meet the fourth *McDonnell Douglas* prong, she fails to do so. She argues that she has shown an inference because she had made a prior complaint on a Phillips telephone ethics help line against the Phillips Sweeny refinery in 2012, claiming unspecified discrimination during a job interview. (Docket Entry No. 14-14 at 15). When asked if she had any evidence that anyone at

the Sweeny plant had discussed this oral complaint she had made years earlier with anyone at the Borger plant, she said "no." (*Id*. at 24).

Wittmer argues that in 2012 she also filed an EEOC discrimination charge about the complaint she made on the telephone ethics helpline against the Phillips Sweeny plant. (Docket Entry No. 16 at 14–15, Charge No. 451-2012-02417). Wittmer argues that the Phillips Borger plant should have known of her prior EEOC complaint against the Sweeny plant. (*Id*.). But Wittmer testified that she did not refer to her complaint she had made on the ethics helpline in her 2012 EEOC charge. (Docket Entry No. 14-14 at 15). Phillips provides evidence that it first learned about the 2012 EEOC charge against Phillips or its Sweeny plant in February 2018, when Wittmer filed her response to Phillips's motion for summary judgment. (Docket Entry No. 20 at 1–2). Phillips states that when it contacted the EEOC to learn more about the 2012 charge, it discovered that Wittmer had not made the charge against the Phillips Sweeny plant, but against another, unrelated company, Testengeer, Inc. (Docket Entry No. 21). Wittmer has not pointed to or submitted any evidence supporting an inference that Phillips Borger personnel were aware of any prior complaint against the Phillips Sweeny plant. Wittmer's argument is based on an EEOC charge against a different company.

Wittmer also argues that Phillips focused on the discrepancies in the information she provided on her employment with Agrium but ignored similar discrepancies in her reports of her employment history before Agrium. This argument is unpersuasive. Phillips focused on Wittmer's employment with Agrium because it was her most recent employer, her employment had ended, and because Wittmer represented that she was actively employed by Agrium at the time of her Phillips interview on August 3, 2015.

    **B.**     **A Legitimate, Nondiscriminatory Reason**

Even if Wittmer made a *prima facie* showing of discrimination, Phillips has identified a legitimate, nondiscriminatory reason for rescinding the offer—Wittmer's inconsistent descriptions of her employment status with Agrium. S*ee, e.g.*, *Colbert v. Harris Cty. Juvenile Prob.*, No. H-13-2770, 2014 WL 7404042 (S.D. Tex. 2014) (a misrepresentation in an initial interview "satisfied [the] burden to articulate a non-discriminatory reason" for rescinding an offer of employment).[2]

The Fifth Circuit has consistently held that a legitimate reason, even if incorrect, defeats a Title VII claim. *See LeMaire v. Louisiana*, 480 F.3d 383, 391 (5th Cir. 2007) (the court's job in "conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions. Our anti-discrimination laws do not require an employer to make proper decisions . . . . " And a plaintiff must show more than that an adverse employment action was improperly or incorrectly made); *Delaval v. Ptech Drilling Tubulars, L.L.C.*, 524 F.3d 476, 480 (5th Cir. 2016) ("Management does not have to make proper decisions, only non-discriminatory ones."); *Harris v. Miss. Transp. Comm'n*, 329 Fed. App'x 550, 557 (5th Cir. 2009) ("Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext.") *Sandstad v. CB Richard Ellis*, 309 F.3d 893, 899 (5th Cir. 2002) ("The issue at the pretext state is whether [the employer's] reason, even if incorrect, was the real reason for [the employee's] termination."). Phillips's stated reason for rescinding Wittmer's offer shifts the burden back to Wittmer to show that the reason was a pretext for discrimination or that discrimination was a

---

[2] Wittmer's subsequent uninvited emails to Phillips, in which her account of her job status and termination from Agrium changed after Phillips confronted her about the discrepancies, confirmed Phillips's decision to rescind the offer. (Docket Entry No. 14-2 at 3; Docket Entry No. 14-8); s*ee Strong v. Univ. Healthcare Sys. L.L.C.*, 482 F.3d 802, 805–06 (5th Cir. 2007); *Gollas v. Univ. of Tex. Health Science Ctr.*, 425 F. App'x 318, 328 (5th Cir. 2011) (improper conduct is a legitimate reason for an adverse employment action.).

motivating factor in the decision.

### C. Pretext or Motivating Factor

Wittmer makes two arguments to show pretext. First, she argues that she did not misrepresent her employment at Agrium during her interview at Phillips because she talked only about work she had done in the past at Agrium. Her deposition testimony undermines her argument. Wittmer testified that during her interview she talked about her current projects at Agrium, stating that she still worked there, and that she was looking for a different job because Agrium wanted her to go to Canada. In fact, she had already received notice that Agrium terminated her employment effective several days before her Phillips interview. (Docket Entry No. 14-14, Ex. 3 at 5–7).

Second, Wittmer argues that she reasonably believed that she was still employed with Agrium at the time of her interview with Phillips. This argument is equally unavailing. When Phillips confronted her about the discrepancy, she readily admitted it and provided a letter from Agrium stating that her employment had terminated effective July 28, 2015. (Docket Entry No. 14-9). She also said that she was paid through August 2, but she had told HireRight that her employment ended August 1, 2015. That was the information Phillips had when it made the rescission decision.

Wittmer later filed a complaint with HireRight to change the record as to the date her Agrium job ended to August 3, 2015. (Docket Entry No. 15-2 at 12–19). The Agrium termination letter, dated July 28, stated that Wittmer was paid through August 2, 2015, reflected in her pay stub. (Docket Entry No. 15-4). The letter from Agrium shows that on July 28, Wittmer was on notice that her employment with Agrium was terminated. Wittmer knew that she was terminated on July 28, before the Phillips interviews, in which she talked about Agrium

as her current employer.

A termination date is the date an employee "receives notice of termination, and not the final date of employment." *Allen v. Cty. of Galveston*, 352 F. App'x 937, 939 (5th Cir. 2009); *see also Del. State Coll. v. Ricks*, 449 U.S. 250, 257–58 (1980) (the filing period started when the tenure decision was made and communicated to employee, even though the loss of the position occurred later); *Stith v. Perot Sys. Corp.*, 122 F. App'x 115, 117 (5th Cir. 2005) ("The operative date . . . is the date of notice of termination, rather than the final date of employment.") (citing *Clark v. Resistoflex Co.*, 854 F.2d 762, 765 (5th Cir. 1988). These cases involve the date limitations began, but the treatment of when an employee is on notice of termination applies here as well.

Wittmer similarly fails to present or point to any record evidence supporting an inference that her transgender status was a motivating factor in Phillips's decision to rescind her offer. It is undisputed that Phillips made the decision to rescind Wittmer's offer several days before Wittmer informed the company of her transgender status. There is no evidence that anyone at Phillips knew of Wittmer's status before she sent the September 10 email, nor that her status motivated Phillips's decision to rescind the offer.

Wittmer argues that her email to Fulton and Edwards on September 10, stating she is a transgender female, was a protected complaint of sex discrimination because she referred to Phillips's diversity policy and the federal prohibition of sex discrimination. (Docket Entry No. 14-8 at 8).³ She sent the email to Phillips stating that she was transgender after Phillips had

---

³ Job applicants can raise protected complaints under Title VII's anti-retaliation provision. *See* 42 U.S.C. § 2000e-3(a); *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61–62 (2006). However, Wittmer is not raising a retaliation claim here, and merely stating that she is transgender and that Phillips has a nondiscrimination policy is not a protected complaint. The analysis for such a claim would be the

16

decided to rescind the offer and had taken steps to make sure it was done properly.

Wittmer neither presents nor points to record evidence to support an inference that Phillips's legitimate reasons for rescinding the offer were a pretext for discrimination, or that her later-related information about her transgender status was a motivating factor in the decision to rescind the offer.

**IV.	Conclusion**

Phillips's motion for summary judgment is granted.  Final judgement is entered by separate order.

SIGNED on April 4, 2018, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

---

same, and the record evidence shows that Phillips made its decision to rescind the job offer before Wittmer made any claim about her transgender status.